**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICHARD BERNARD,** | : | **Civil No. 3:11-CV-1522** |
| | : | |
| **Plaintiff** | : | **(Judge Conaboy)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **MICHAEL J. ASTRUE,** | : | |
| | : | |
| **Defendant** | : | |

## REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Richard Bernard brought this action pursuant to 42 U.S.C. § 405(g) on August 17, 2011, appealing the final decision of the Commissioner of Social Security to deny Bernard's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.

Bernard applied for DIB on March 31, 2008, alleging that he had been disabled since October 24, 2005, as the result of pain in his back and lower extremities he suffers following back surgery. The Social Security Administration denied the plaintiff's claim initially on September 4, 2008. The plaintiff timely filed a request for a hearing on September 18, 2008, and a hearing was thereafter held before Administrative Law Judge ("ALJ") Sridhir Boini on October 21, 2009. In a decision

issued on January 27, 2010, the ALJ denied the plaintiff's claims for DIB. Thereafter, the plaintiff requested review by the defendant's Appeals Council, which denied the request on June 17, 2011, rendering the ALJ's decision the final decision of the Commissioner of Social Security with respect to the plaintiff's claims for DIB.

In this action, the plaintiff argues that the Commissioner's decision is not supported by substantial evidence, and otherwise contains errors of law that require reversal or remand for a new hearing. Specifically, the plaintiff argues that the ALJ erred in determining that the plaintiff retained the residual functional capacity that enabled him to perform light, sedentary work, and thus in finding that the plaintiff was not totally disabled within the meaning of the Social Security Act and its implementing regulations. The plaintiff argues that the ALJ improperly rejected the opinion of the plaintiff's treating physician without substantial basis, and erroneously discounted the plaintiff's subjective complaints of his pain and physical limitations based upon insufficient evidence.

The defendant answered the complaint on October 14, 2011. Thereafter, the plaintiff filed a brief in support of his appeal on January 27, 2012. On February 28, 2012, the defendant filed a brief urging that the court affirm the ALJ's decision. Thereafter, the plaintiff filed a reply brief in further support of his appeal on March

30, 2012. On September 25, 2012, the case was referred to the undersigned for pretrial management and the preparation of a report and recommended disposition.

Upon consideration of the entire record submitted by the parties, we conclude that the ALJ's rationale for rejecting the plaintiff's claim for DIB was inadequate and based upon insufficient evidence. We particularly find that the ALJ's explanation for according little to no weight to the plaintiff's treating physician's opinion regarding the plaintiff's serious physical limitations was inadequate because it provided little evidentiary basis to explain why this opinion evidence was rejected in favor of other evidence from non-treating sources. We are thus unable to discern from the record how the ALJ reached his ultimate conclusion regarding the extent of the plaintiff's physical limitations, and regarding the weight actually given to the treating physician's medical opinions.

Mindful of our deferential standard of review, we nevertheless also find that the ALJ's explanation for rejecting the plaintiff's subjective description of his pain was inadequate and falls short of what is required under the law in this area.

For these reasons, we will recommend that the district court remand this matter to the Commissioner so that a proper determination can be made regarding the plaintiff's claim for DIB based upon the record evidence submitted in this case.

## II.  **BACKGROUND**

Richard Bernard was born on May 15, 1963, and was 42 years old on his alleged onset date of disability, 43 years old at his date last insured, and 46 years old on the date of his hearing.  (R. 111.)  Bernard is considered a "younger individual" under the Commissioner's regulations. 20 C.F.R. § 416.963.  The plaintiff has a high school education, (R. 133), and his past relevant work includes time spent as a chauffeur, an auto parts salesman, a shipping and receiving worker, and a warehouse worker.  (R. 74-76, 138-144.)

Bernard claims that he became disabled as the result of degenerative disc disease of the lumbar spine, which occurred following surgery that he had in 1992, as well as radiculopathy into the right leg, and left knee pain stemming from reconstructive surgery.  The plaintiff claims that these conditions combine to cause chronic pain that substantially limit the plaintiff's ability to perform daily activities and to engage in work-related activities.

Following a hearing, the ALJ concluded that the plaintiff was not entirely disabled, but rather had the residual functional capacity to perform

> sedentary work, as defined in 20 CFR 404.1567(a) with the ability to carry, at most, 10 pounds on an occasional basis and 5 pounds on a frequent basis.  The claimant had the ability to use his upper extremities without restriction.  With respect to activities such as standing or walking, he could not have performed these type of activities over a

prolonged or continuous basis and not over any uneven terrain. The claimant would have been able to perform a job that permitted him to alternate between sitting or standing on a self-directed basis. The claimant could have worked in an occupation that required, at best, occasional operation of foot controls or climbing of ladders, scaffolds or ropes. The claimant would have had the capacity to climb ramps or stairs occasionally. The claimant did not require assistive device for balancing and he would have been able to perform balancing on an occasional basis. The claimant would have been able to perform an occupation that required only at the most, occasional stooping, crouching, kneeling or crawling. The claimant was able to perform work that did not involve more than, at best, a moderate exposure to an environment that involved the presence of moving machinery or moving motor vehicles, or an exposure to unprotected heights on more than a moderate basis. The claimant would have been able to work in atmospheres where there would not be an exposure to extreme cold or heat or excessive wetness or humidity for extended periods of time. His exposure capacity for temperature extremes, humidity, or wetness, would be, at best, at a moderate basis. The claimant would have been able to work in an occupation where the communication dynamic is mostly oral, with maybe some limited written communication. Because of the interference of the claimant's pain on his concentration, he would have been able to perform work tasks that were at an unskilled level.

(R. 19, Finding of Fact No. 5.) On the basis of this assessment, and the conclusions regarding the claimant's residual functional capacity, the ALJ found that the plaintiff could not return to any of his past relevant work, but could nevertheless perform sedentary work in a number of different job capacities existing in the regional and national economy. (R. 23-24, Findings of Fact Nos. 6, 10.) Accordingly, the plaintiff's claim for DIB was denied at step five of the sequential evaluation applied by the ALJ, as explained more fully below.

# III.   DISCUSSION

## A.   Standards of Review–The Roles of the Administrative Law Judge and This Court

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the administrative law judge (ALJ) and this court.  At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits.  To receive disability benefits, a claimant must present evidence which demonstrates that he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

In making this determination the ALJ employs a five-step evaluation process to determine if a person is eligible for disability benefits. 20 C.F.R. § 404.1520. <u>See also</u> <u>Plummer v. Apfel</u>, 186 F.3d 422, 428 (3d Cir. 1999). If the ALJ finds that a plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. 20 C.F.R. § 404.1520. As part of this analysis the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520. This disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he is unable to engage in past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993).

Moreover, where a disability determination turns on an assessment of the level of a claimant's pain, the Social Security Regulations provide a framework under which

a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529. Such cases require the ALJ to "evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work." Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999). Cases involving an assessment of subjective reports of pain "obviously require[ ]" the ALJ "to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." Id.

In making this assessment, the ALJ is guided both by statute and by regulations. This guidance eschews wholly subjective assessments of a claimant's pain. Instead. at the outset, by statute the ALJ is admonished that an:

> individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all the evidence. . . , would lead to a conclusion that the individual is under a disability.

42 U.S.C. § 423(d)(5)(A).

Applying this statutory guidance, the Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529. Under these regulations, first, symptoms, such as pain, will only

8

be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. § 404.1529(b). Once a medically determinable impairment that results in such symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on the claimant's ability to work. 20 C.F.R. § 404.1529(b). In so doing, the medical evidence of record is considered along with the claimant's statements. 20 C.F.R. § 404.1529(b). Social Security Ruling 96-7p gives the following instructions in evaluating the credibility of the claimant's statements regarding his symptoms:

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.

Social Security Ruling 96-4p, in turn, provides that "Once the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the pain or other symptoms alleged has been established on the basis of medical signs and laboratory findings, allegations about the intensity and persistence

9

of the symptoms must be considered with the objective medical abnormalities, and all other evidence in the case record, in evaluating the functionally limiting effects of the impairment(s)." SSR 96-4p.

The ALJ's disability determination must also meet certain basic procedural and substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Com. of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

Once the ALJ has made a disability determination, it is then the responsibility of this court to independently review that finding. In undertaking this task, this court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying plaintiff's claim for disability benefits, Congress has specifically

provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g).

The "substantial evidence" standard of review prescribed by statute is a deferential standard of review. Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). When reviewing the denial of disability benefits, we must simply determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)." Johnson, 529 F.3d at 200. See also Pierce v. Underwood, 487 U.S. 552 (1988). It is less than a preponderance of the evidence but more than a mere scintilla of proof. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Plummer, 186 F.3d at 427 (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).

A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). However, in an adequately developed

factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966). Moreover, in conducting this review we are cautioned that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.' Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir.1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir.1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." Frazier v. Apfel, No. 99-715, 2000 WL 288246, *9 (E.D. Pa. March 7, 2000). Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

### B. The ALJ's Decision Was Not Supported By Substantial Evidence

Guided by the foregoing legal requirements and benchmarks, we find that the ALJ's decision finding that the claimant, Richard Bernard, was not fully disabled, was

not supported by substantial evidence in the record, and failed to satisfy the foregoing legal requirements and agency regulations. We specifically find that the ALJ's opinion failed adequately to explain the reasons for rejecting the opinion of the treating physician's testimony, and for essentially rejecting the plaintiff's subjective complaints regarding pain. For these reasons, we will recommend that the district court remand this case to the ALJ so that he may consider the claim again, and issue a decision that is fully and properly explained and predicated on substantial evidence in the record.

The ALJ found that the plaintiff was unable to perform his past relevant work, but ultimately denied his claim at step five of the sequential evaluation process after concluding that he retained the residual functional capacity that would enable him to perform light sedentary work in jobs that existed in significant numbers throughout the regional and national economy. (R. 23-24, Findings of Fact Nos. 6, 10.) In making this ultimate conclusion, the ALJ found that the plaintiff had the residual functional capacity to perform sedentary work in which he would be limited to lifting and carrying 10 pounds occasionally, and five pounds frequently; would be unable to stand or walk for a prolonged or continuous basis, and never over uneven terrain; would permit him to alternate between sitting or standing at his option; would involve only occasional operation of foot controls, occasional climbing of ladders, ropes,

scaffolds, ramps, or stairs; would involve only occasional balancing, stooping, crouching, kneeling, or crawling; would require only moderate exposure to moving machinery, motor vehicles, unprotected heights, extreme temperatures, humidity, or wetness; would entail mostly oral, and limited written, communication; and which would require no more than unskilled work tasks. (R. 19, Finding of Fact No. 5.) The plaintiff argues that in making these findings of fact, the ALJ improperly rejected the opinion offered by the plaintiff's treating physician, and made mistakes of both fact and law in rejecting the testimony of the plaintiff regarding the extent of his pain and physical limitations. We will address, in turn, the plaintiff's assertions of error in the ALJ's findings and conclusions.

### 1.    Treating Physician Opinion

"Treating physicians' reports should be accorded great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" Plummer, 186 F.3d at 429 (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987)). An ALJ may reject a treating physician's opinion regarding a claimant's disability outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided. Id. (citing Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985)); see

also Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'") (quoting Plummer, 186 F.3d at 429). A treating physician's opinion cannot be rejected outright where there is no contrary medical evidence. Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001). Instead, the ALJ "must consider the medical findings that support a treating physician's opinion that the claimant is disabled." Morales, 225 F.3d at 317. If the ALJ ultimately rejects the treating physician's assessment, the ALJ "may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." Id. at 317-18 (internal quotation marks and citations omitted). Controlling regulations in this field also provide that where the "treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see also Fargnoli, 247 F.3d at 43; Cotter, 642 F.2d at 704.

The evidence in this case shows that the plaintiff has a lengthy history of low back and right leg pain. (R. 20.) In 1992, the plaintiff had surgery for herniated discs at L4-S1 and L1-2. (R. 20, 372.) The plaintiff was released from surgery in good condition, but soon thereafter began experiencing pain in his back and lower extremities. In March 2006, an MRI of the plaintiff's lumbar spine showed disc degeneration with disc bulges and L1-L2 and L4-L5, with a likely small disc herniation. (R. 20, 420-21.) As a result of his back and leg pain, the plaintiff began treating with Dr. Claude Macaluso, a neurologist, in April 2006. (R. 21, 401.)

Following more than three years of treating the plaintiff, Dr. Macaluso completed a questionnaire in August 2009, in which he offered his opinions regarding the work-related limitations that were related to the plaintiff's medical condition and impairments. In that opinion, Dr. Macaluso proffered that the plaintiff was limited to lifting and carrying less than ten pounds; standing and walking less than two hours in an eight-hour workday; standing no more than 15 minutes at a time, and walking not more than one-half of a block without resting; sitting less than two hours during an eight-hour workday, and no more than 45 minutes at a given time. Dr. Macaluso also opined that the plaintiff must be able to alternate sitting and standing at will, and must be able to lie down at least three times during an eight-hour workday. According to Dr. Macaluso's assessment, the plaintiff could occasionally twist, crouch and climb

stairs, but could never stoop or climb ladders; had limitations in reaching, feeling, pushing, and pulling; needed to avoid exposure to extreme temperatures, wetness, and humidity, and must avoid all exposure to heights. Finally, Dr. Macaluso noted that the plaintiff was unable to push, pull or carry items, and is otherwise "unable to maintain any position for any prolonged period of time." (R. 239-241.) These marked limitations on the plaintiff's ability to exert himself were due to "[p]ersistent low back and right leg pain greater than left leg pain. History of prior back surgery at 2 levels (T + LS spine) - 1992; probable arachnoiditis."[1] (R. 240.) In addition, Dr. Macaluso identified as a limiting factor degenerative disc disease of the lumbosacral spine and bilateral osteoarthritis of the knees, with the left being worse than the right, as well as

---

[1] According to the National Institute of Neurological Disorders and Stroke, a division of the National Institutes of Health, Arachnoiditis "describes a pain disorder caused by the inflammation of the arachnoid, one of the membranes that surround and protect the nerves of the spinal cord. The arachnoid can become inflamed because of an irritation from chemicals, infection from bacteria or viruses, as the result of direct injury to the spine, chronic compression of spinal nerves, or complications from spinal surgery or other invasive procedures. Inflammation can sometimes lead to the formation of scar tissue and adhesions, which cause the spinal nerves to 'stick' together. If ararchnoiditis begins to interfere with the function of one or more of these nerves, it can cause a number of symptoms, including numbness, tingling, and a characteristic stinging and burning pain in the lower back or legs. Some people with arachnoiditis will have debilitating muscle cramps, twitches, or spasms. It may also affect bladder, bowel, and sexual function. In severe cases, arachnoiditis may cause paralysis of the lower limbs." http://www.ninds.nih.gov/disorders/arachnoiditis/arachnoiditis.htm (last visited March 13, 2013).

shoulder pain, which impaired the plaintiff's ability to reach. Dr. Macaluso explained the basis for the plaintiff's feeling limitations as "decreased sensation R leg" and "signs of neuropathy by EMG/NC of the lower extremities." (Id.) The record reflects that if the ALJ had accepted Dr. Macaluso's opinion, he would have found Mr. Bernard to have been disabled on the basis of testimony given by a vocational expert regarding the impact of the plaintiff's limitations on his ability to maintain employment. (R. 79-80.)

Instead, however, the ALJ rejected Dr. Macaluso's opinion, which was rendered after more than three years of treating the plaintiff. In so doing, the ALJ indicated that he gave "little weight to Dr. Macaluso's assessment of the claimant's limitations," apparently because he found the limitations imposed in the opinion to be "not consistent with the other evidence of record" and because they were "disproportionate to Dr. Macaluso's routine and conservative management of the claimant's symptoms." (R. 23.) Upon review of the record and the ALJ's opinion, however, we observe that the ALJ does not explain how Dr. Macaluso's opinion is inconsistent with other medical evidence in this case, and fails to provide a sufficiently grounded basis for declining to give weight to Dr. Macaluso's medical opinion as the plaintiff's treating physician. In this regard, we find that the ALJ's opinion falls short of what the Commissioner's own ruling in this area require. See Social Security Ruling 96-2p

(requiring the ALJ to "always give good reason in the notice of the determination or decision for the weight given to a treating source's medical opinion(s)" and requiring that the decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

In fact, it appears that much of what Dr. Macaluso opined regarding the plaintiff's medical condition and attendant physical limitations is consistent with other relevant medical evidence in the record, including the only other evidence in the record from another treating medical provider at Pocono Adult and Pediatric Medical Group, where the plaintiff presented with low back pain in February and June, 2006. (R. 178.)

The plaintiff has also identified specific numerous instances in his medical records that support Dr. Macaluso's opinion regarding the plaintiff's limitations. Thus, during the plaintiff's initial visit to Dr. Macaluso, it was observed that the plaintiff complained of "persistent [lower back pain] radiating into posterior right leg" which "increases with prolonged sitting, walking" and which had been present since September 2005. (R. 401.) During a visit, the plaintiff informed Dr. Macaluso that he was most comfortable when in the fetal position. (Id.) Included among Dr.

Macaluso's records were observations that the plaintiff suffered from herniated discs, leading to the laminectomy procedure that was performed in 1992. (R. 372-378, 401.) Another MRI performed in March 2006 revealed that the plaintiff had a central herniated pulposus at L4-S1, causing foraminal narrowing. (Id., R. 420-421.) As noted Dr. Macaluso concluded that he could not rule out a diagnosis of arachnoiditis resulting from the plaintiff's prior surgery, or a new herniated disc. (R. 401.) In order specifically to address the plaintiff's symptoms and help him to manage the pain he reported, Dr. Macaluso's records indicate that he prescribed Flexeril, Voltaren, Pamelor, Elavil, and Vicodin, and he referred the plaintiff to receive an electromyography and nerve conduction study ("EMG/NC"). (Id.) The EMG that was subsequently performed showed that the plaintiff had nerve conduction abnormalities that were "consistent with a demyelinating polyneuropathy in the lower extremities nerves." (R. 368-371, 400.)

The record further shows that in late May 2006, the plaintiff reported to Dr. Macaluso that his pain was persisting and, in fact, worsening in that he was suffering from "more leg cramping, more tingling in the legs and foot." (R. 399.) Dr. Macaluso was unable to discern a "clear cause of pain" following review of an MRI, but he nevertheless observed that Mr. Bernard was "clearly disabled by pain," regardless of the murky etiology. (Id.) Following this visit and assessment, Dr. Macaluso

continued to diagnose the plaintiff with radiculopathy and possible peripheral neuropathy. (Id.) Substantially similar findings and assessments were made in July and October 2006, very shortly after the plaintiff's date of last insured. (R. 394, 398.) In October 2006, Dr. Macaluso continued to make notations regarding the plaintiff's right leg weakness, decreased sensation, burning in the right leg, and decreased range of motion of the lumbar spine. (R. 381-393.)

There is, thus, considerable evidence in the record to support Dr. Macaluso's ultimate opinion reached after three years of treating the plaintiff, who continued to present with disabling pain and attendant limitations on his mobility.

In his brief, the defendant maintains that the ALJ was free to reject Dr. Macaluso's opinion because it "was not supported by Plaintiff's clinical examinations, conservative treatment, and activities of daily living." (Doc. 13, at 11.) In support of his argument, the defendant identifies evidence in the record that he suggests is contrary to Dr. Macaluso's opinion regarding the claimant's disability, but as the plaintiff correctly notes, the ALJ did not specifically cite to any of this evidence in support of his ultimate rejection of Dr. Macaluso's testimony. We agree with the plaintiff that this post-hoc rationalization of the ALJ's opinion is insufficient in order to allow the court to sustain the ALJ's decision in this action.

The Third Circuit has long held that district courts are required to assess the Commissioner's decision based on the findings and reasoning actually articulated by the ALJ, and not based upon the legal or factual arguments offered in the Commissioner's briefs on appeal. Fargnoli v. Massanari, 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of SEC v. Chenery Corporation, 318 U.S. 80, 63 S. Ct. 454, 87 L.Ed. 626 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.'"); Sykes v. Apfel, 228 F.3d 259, 271 (3d Cir. 2000). Guided by this precedent, the court should decline to rely upon the arguments offered by counsel in this action, and should instead be guided by the decision that the ALJ actually issued, which we submit provides an insufficient explanation for why the opinion of a treating physician was rejected wholesale.

Moreover, in his summary and review of the record in this case, the defendant included citation to a November 2007 report by Dr. Selby that indicated the "plaintiff's left knee demonstrated normal alignment, no swelling, and a well-healed surgical incision." (Doc. 13, at 11.) Remarkably, the ALJ never mentions this

particular piece of evidence in his opinion, and we thus cannot embrace the suggestion that this additional evidence supports the decision that the ALJ actually reached in this case. Moreover, this evidence – never mentioned by the ALJ – would appear to have limited probative value with respect to the plaintiff's complaints regarding his back pain and right leg limitations. We urge the district court to decline the defendant's invitation to uphold the ALJ's decision in this case based, in part, on evidence that the ALJ never identified in the record as forming the basis for his decision.[2]

In our review of the ALJ's opinion, we believe it is clear that the summary of the medical evidence that the defendant now urges the court to construe as justification for the decision to deny benefits was, in fact, just a summary and not a specific recitation of the evidence that was accepted and rejected in reaching the ALJ's ultimate conclusion. Were we to view this summary as providing a substantive explanation for the evidence the ALJ relied upon, we would be constrained to note that the ALJ also included in this summary Dr. Macaluso's conclusion that "the claimant

---

[2] We anticipate that the defendant's inclusion of this additional evidence in its brief reflects the Commissioner's own recognition that the ALJ's opinion in this case was fundamentally flawed reflected an inadequate basis for rejecting outright Dr. Macaluso's conclusions and opinions. It may be that medical evidence in the record would support the ultimate conclusion that the plaintiff's claim for DIB fails at the fifth step of the sequential process, but we do not find that the ALJ's conclusion in this regard can reasonably be found to be supported from the opinion that the ALJ actually authored in this case.

was clearly disabled by pain" notwithstanding the fact that the etiology was unclear. (R. 21.) Likewise, the summary includes observations from Dr. Amr Hosny, a pain management physician, who noted substantial limitations in the plaintiff's ability to heel-to-toe walk, decreased sensation in the plaintiff's right leg, tenderness in the plaintiff's right lumbar facets, and a positive straight leg raising on the right leg. (R. 21.) The inclusion of these observations, together with those specifically highlighted by the defendant in his brief, make plain that the ALJ was doing no more than reciting the medical evidence that was in the record much of which supported the plaintiff's claim, and some of which did not. The ALJ was not identifying the evidence that he accepted and that he rejected. We agree with the plaintiff that it is impossible to conclude that a reasoned analysis of the evidence was undertaken in this case.

It is true that the ALJ states in his opinion that "the limitations that [Dr. Macaluso] imposes are not consistent with the other evidence of record and are disproportionate to Dr. Macaluso's routine and conservative management of the claimant's symptoms." (R. 23.) But this finding, standing alone, does not cure the ALJ's opinion. As a threshold matter, it is difficult for the court to discern the basis for the ALJ's conclusion that Dr. Macaluso's treatment of the plaintiff was "routine and conservative," or the suggestion that Dr. Macaluso's opinion might have been

more credible if he had explored some different kind of treatment.[3] If there is evidence in the record to support such a conclusion, the ALJ does not sufficiently identify what it is and where it may be found in the record. As noted above, in order to uphold the ALJ's decision, the court must find that the ALJ provided an adequate explanation of the evidence he accepted, the evidence he rejected, and the reasons why. In this case, we do not find that the ALJ provided an explanation that satisfies this requirement.

Finally, we note that the record in this case would appear to contain considerable evidence from multiple sources that is actually supportive of, and not inconsistent with, Dr. Macaluso's opinion. In this regard we note that the record contains evidence from the plaintiff's pain management physician, Dr. Hosny, between

---

[3] The absence of a clear explanation for the ALJ's finding in this regard renders his decision incapable of sufficient review by the court. In this regard, we submit that the ALJ has not supported his conclusion that the treatment that Dr. Macaluso provided to the plaintiff was somehow indicative of a non-disabling condition, or otherwise undermined the plaintiff's complaints regarding the extent or severity of his pain and disability. The record reveals that Dr. Macaluso, over a period of years, referred the plaintiff for testing, x-rays, MRIs, EMGs, and prescribed the plaintiff with pain medications in order to treat the plaintiff's pain. (R. 379-80.) To the extent the ALJ found that this course of treatment was conservative or routine, and for that reason suggested that the plaintiff was not disabled by the pain he reported, it was incumbent upon the ALJ to identify some evidence in the record upon which to base his decision. In the absence of an explanation as to why Dr. Macaluso's treatment was discounted as conservative or routine, we believe that the district court should decline to embrace the ALJ's lay opinion over the opinion of the plaintiff's treating physician.

January 26, 2009, through September 4, 2009 (R. 236-238, 256-267), and the results of MRIs that were performed in October 2008 and October 2009, along with a November 2008 EMG (R. 224, 226-227, 268-269), all of which is largely consonant with Dr. Macaluso's August 2009 opinion. Moreover, we agree with the plaintiff that the examination of consultative examiner Dr. Joyce Vrabec conducted on July 31, 2008, includes findings that are also in many ways supportive of the plaintiff's claim. During this examination, Dr. Vrabec reported that the plaintiff walked with an obvious limp, had great difficulty climbing onto an examining table, had muscle spasms in the right lumbar area, and had a positive straight-leg raising test. (R. 207-208.) In addition, Dr. Vrabec indicated that she believe the plaintiff may have had a diminished patellar reflex, and decreased sensation in his right leg. (Id.) Although the ALJ purported to rely, in part, on Dr. Vrabec's opinion in denying the plaintiff's claim for DIB, we note that Dr. Vrabec's examination report also provides additional support for Dr. Macaluso's August 2009 opinion regarding the extent of the plaintiff's limitations.

For all of the foregoing reasons, we find that the ALJ's decision fails sufficiently to identify the evidence that he accepted, and the evidence that he rejected, and the opinion is thus incapable of being adequately reviewed to determine whether

the ALJ's rejection of Dr. Macaluso's opinion was based upon adequate support in the record.

## 2. Plaintiff's Subjective Complaints of Pain

We also find that the ALJ's opinion fails to explain sufficiently the reasons why the plaintiff's subjective complaints of pain were rejected or found to be not credible. The regulations in this field require an ALJ to consider a number of factors when evaluating a claimant's claims regarding pain and other subjective complaints. 20 C.F.R. § 404.1529. Those regulations provide that an ALJ should consider the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain and other symptoms, and any treatment other than medication that the plaintiff has received for pain management, along with self-directed measures to mitigate pain. 20 C.F.R. § 404.1529(c)(3)(iv)-(vi). As the plaintiff observes, the Commissioner's rulings in this area also require that the ALJ made specific findings with respect to credibility assessments:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the

adjudicator gave to the individual's statements and the reasons for that weight.

Social Security Regulation 96-7p. Upon review of the ALJ's decision and the record in this case, we agree with the plaintiff that the ALJ's explanation for rejecting the plaintiff's subjective complaints of pain was inadequate.

In addition to these regulatory guidelines, the Third Circuit has long held that subjective complaints regarding pain and limitations may be disabling, and while there must be some objective medical evidence of a medical condition that could produce pain, the claimant need not be able to identify objective evidence of the pain itself. See, e.g., Chrupcala v. Heckler, 829 F.2d 1269, 1276 n.10 (3d Cir. 1987); Dorf v. Bowen, 794 F.2d 896, 902 (3d Cir. 1986); Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981).

In his decision, the ALJ cites to the governing regulations and rulings in this area, and addresses Mr. Bernard's testimony, but nevertheless the opinion falls somewhat short of what is required in order for the court to uphold the ALJ's findings regarding the plaintiff's subjective complaints of pain. Specifically, the ALJ's decision appears to reject the plaintiff's claims regarding his pain and physical limitations largely on the basis that the plaintiff engages in daily activities and limited

chores around his home.  Thus, the ALJ rejected the plaintiff's testimony, reasoning that:

> the claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.  Although he alleges that he cannot do very many activities at all because of constant and severe pain, he also admits to performing household chores such as laundry and dishes, seeing his children off to school, preparing simple meals, driving his wife to and from the train station.

(R. 23.)  As the plaintiff notes, however, the ALJ omits from this discussion any qualifying information that limits somewhat the import of this testimony.  In this regard, the plaintiff testified that he drove his wife to the bus station in the morning, but the station was only one minute from the house.  (R. 68.)  The plaintiff testified that he then returned to the house and went back to bed for an hour-and-half.  (R. 71.)  With respect to the plaintiff getting his 16 and 11-year old children off to school in the morning, the plaintiff testified that they caught the bus outside the house, while the plaintiff watched from inside.  At the hearing, the ALJ seems to have acknowledged that this particular housework was especially limited, noting "it's not like you have to really do anything for them.  They're old enough to start, get themselves – all right." (R. 71.)  Furthermore, even though the testimony indicated the plaintiff engaged in especially limited household chores or activity, the plaintiff nevertheless testified that these limited activities were "pretty rough on [him]."  (R. 65.)  Not only were these

activities especially limited, and notwithstanding the omission of reference to the plaintiff's qualifying testimony, the Third Circuit has held that engaging in limited and transitory activities such as light housework and using public transportation are insufficient, in themselves, to demonstrate that a claimant has the ability to engage in gainful activity. See Jesurum v. Secretary of Health & Human Servs., 48 F.3d 114, 119 (3d Cir. 1995); Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988); Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981). Moreover, we have difficulty finding support for the ALJ's ultimate conclusion that the plaintiff can engage in light work as an employee simply because he testified that he occasionally does laundry, sends his children to school, or drives his wife one minute to the bus station in the morning before returning to bed. The Third Circuit has recognized that in some cases there is a marked distinction between being able to perform limited household duties and being able to hold down a job as an employee, and we submit that the evidence in the record suggests that this is such a case where the seemingly "sporadic and transitory" nature of the plaintiff's household activities, Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981), offers insufficient support for a finding that the plaintiff is capable of working outside the home. To the extent that this testimony forms the basis for the ALJ's decision to deny benefits, we believe that greater explanation is needed in order

to show how the limited nature of this activity could support a finding that the claimant could engage in sustained light activity as an employee.

We also find unpersuasive the ALJ's rationale for rejecting the plaintiff's subjective complaints of pain on the grounds that the plaintiff's medical treatment was conservative and limited. As we explained above, the ALJ provided insufficient explanation, based upon evidence in the record, to justify his lay opinion that the plaintiff's medical treatment directed by his treating physicians was too limited if his pain was as extensive has he claimed. The lack of evidentiary support for this conclusion, coupled with what we find is an insufficient explanation regarding the ALJ's assessment of the plaintiff's daily activities and the import of this testimony on the plaintiff's claim regarding his disability, causes us to find that the ALJ's assessment of the plaintiff's subjective complaints regarding his pain and limitations was inadequate.

In sum, we submit that the ALJ's opinion in this case was not supported by substantial evidence in the record, and is otherwise inadequate for failing to identify sufficient support for the ALJ's conclusions regarding the degree to which the plaintiff is disabled and limited in his ability to engage in work outside the home. Therefore, we will recommend that the district court remand this matter to the ALJ so that he can

reconsider the plaintiff's claims for DIB, and issue a decision that is sufficiently based upon the evidence presented.

## IV. __RECOMMENDATION__

For the foregoing reasons, IT IS HEREBY RECOMMENDED THAT the plaintiff's claims for DIB be REMANDED to the Commissioner, with instructions that the plaintiff's claims be reconsidered.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 15th day of March 2013.

_**S/Martin C. Carlson**_
Martin C. Carlson
United States Magistrate Judge